UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,

v.

Demetrius JACKSON, Defendant–Appellant, Cross–Appellee.

Nos. 98–3118, 98–3372.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1999.

Decided May 5, 1999.

**629**

Andrew B. Baker, Jr., Office of the United States Attorney, Dyer, IN, Kenneth M. Hays (argued), Office of the United States Attorney, South Bend, IN, for Plaintiff–Appellee in No. 98–3118.

Kenneth M. Hays (argued), Office of the United States Attorney, South Bend, IN, for Plaintiff–Appellee in No. 98–3372.

James F. Korpal (argued), Heppenheimer & Korpal, South Bend, IN, for Defendant–Appellant, Cross–Appellee.

Before CUMMINGS,* BAUER, and EVANS, Circuit Judges.

* Judge Cummings participated in this case through oral argument; however, he died on

BAUER, Circuit Judge.

Defendant Demetrius Jackson ("Jackson") appeals his conviction for possession with intent to deliver crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2, and possession of crack cocaine, in violation of 21 U.S.C. § 844, and 18 U.S.C. § 2. He claims that the evidence presented to the jury was insufficient to support his conviction. The government cross-appeals, challenging the district court's decision not to sentence Jackson as a career offender under U.S.S.G. § 4B1.1. We affirm the conviction, vacate the sentence, and remand for re-sentencing.

## I. Background

On January 22, 1998, the police pulled Jackson over for speeding. Also in the car, were David Anderson ("Anderson"), who was a passenger in the front seat, and Kanika Bradshaw ("Bradshaw"), who was riding in the back seat. Bradshaw, who claimed to have consumed two beers, was intoxicated. During the stop, the police noticed the corner of a clear plastic bag sticking out from under the middle armrest in the front seat. Upon request, Jackson signed a consent form and allowed the police to search his car, another example of how drugs must affect, in an adverse way, the normal instincts of self-preservation. The search revealed that the plastic bag under the armrest contained just over six grams of crack cocaine. The police also found Jackson's pager and a cell phone in the car. Jackson was carrying $812 dollars, including twenty-seven twenty dollar bills.

On the night of the traffic stop, Bradshaw (who initially told police that her name was Kanika Miller) gave a taped statement. In it, she claimed that when the police came up behind Jackson's car, Anderson told Jackson to "stuff this

April 24, 1999.

[stuff]." Anderson and Jackson then put something between the two front seats. Approximately one week later, Bradshaw accompanied Jackson to his lawyer's office, where she signed what purported to be an affidavit (although she was not sworn). In the document, Bradshaw claimed that she had accidentally picked up the wrong coat at a party, and had discovered the crack in her pocket when the police pulled up behind Jackson's car. She further claimed that it was she who had stuffed the drugs between the seats. At trial, however, Bradshaw testified that Jackson had pressured her into signing the "affidavit." She also testified that the statements in the document were untrue.

Douglas Radican ("Radican"), a member of the narcotics unit of the South Bend Police Department and a task force agent for the Drug Enforcement Administration ("DEA"), also testified at trial. He explained that, at street level, crack cocaine is typically sold in twenty dollar rocks. Therefore, people who distribute crack usually carry numerous twenty dollar bills. Radican also testified that six grams of crack yields approximately fifty to sixty rocks, for a total value of $1000–$1200. Since users generally can't afford to buy such large amounts of cocaine, six grams is considered "dealer quantity" or "distribution quantity." Finally, Radican testified that pagers and cell phones are "prime tools for people that are distributing crack." (Tr. 91.)

On June 2, 1998, a jury found Jackson guilty of one count of possession with intent to deliver crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2, and one count of possession of crack cocaine, in violation of 21 U.S.C. § 844, and 18 U.S.C. § 2. At sentencing, the district court held that Jackson's 1988 Class D felony conviction for criminal recklessness, under Ind.Code § 35–42–2–2, did not constitute a crime of violence. Therefore, the court found that Jackson had committed only one predicate offense (a 1993 conviction for reckless homicide), and declined to enhance Jackson's sentence under the career offender provision of the Sentencing Guidelines, U.S.S.G. § 4B1.1. On August 7, 1998, Jackson was sentenced to ninety-seven months of imprisonment and four years of supervised release.

On appeal, Jackson attacks his conviction on sufficiency of evidence grounds. The government cross-appeals to challenge the district court's determination that Jackson's criminal recklessness offense did not constitute a crime of violence.

## II. Discussion

### A. Sufficiency of Evidence

■ In making his sufficiency challenge, Jackson "faces a nearly insurmountable hurdle ... [in that] we consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir. 1997) (internal quotation marks and citations omitted). Jackson's primary argument in support of his sufficiency challenge is that Bradshaw's testimony lacked credibility. Although Jackson concedes that "[q]uestions of witness credibility are reserved for the jury, and [the jury's] assessments will not be second-guessed by an appellate panel," *United States v. Alcantar*, 83 F.3d 185, 189 (7th Cir.1996), he points out that "[w]e will overturn a conviction based on a credibility determination ... when a witness's testimony was incredible as a matter of law," *United States v. Saulter*, 60 F.3d 270, 275 (7th Cir.1995).

■ To make the necessary showing that Bradshaw's testimony was unbelievable on its face, Jackson must demonstrate either that "it would have been physically impossible for [her] to observe what [s]he described, or [that it would have been] impossible under the laws of nature for those events to have occurred at all." *Al-*

*cantar*, 83 F.3d at 189. Jackson has chosen the first route. More specifically, he contends that Bradshaw was too intoxicated on January 22, 1998 to be capable of giving credible testimony about the events of that night. However, this contention is not adequately supported by the record. Although Bradshaw says that she was intoxicated, she also says that she drank only two beers. The record does not disclose the brand. Too bad. Furthermore, none of the evidence presented at trial suggests that Bradshaw was so intoxicated that she could not function. Bradshaw's testimony was not incredible on its face. As we have said before, "[w]hen a jury has chosen to credit crucial testimony with full knowledge of the many faults of the witness providing it, we have no basis to interfere." *Id.*

■■■ Jackson also argues that the jury should have interpreted Bradshaw's testimony to implicate Anderson alone, and that Jackson would not have allowed the police to search his car if he had known about the cocaine. These arguments suffer from the same defect as Jackson's attack on Bradshaw's credibility. It is the jury's job to choose among competing but reasonable interpretations of witnesses' testimony and to weigh evidence. We will not second-guess the jury's reasonable judgment on appeal. *See United States v. Wallace*, 32 F.3d 1171, 1173 (7th Cir.1994). It is clear that the government presented sufficient evidence from which a rational jury could have found Jackson guilty beyond a reasonable doubt.

## B. Career Offender

■■■ We now move to the government's cross-appeal, which challenges the district court's refusal to enhance Jackson's sentence under the career offender provision of the Sentencing Guidelines. Section 4B1.1 of the Guidelines states:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. It is the third element that is at issue in this case. While both parties agree that Jackson's 1993 conviction for reckless homicide constitutes a crime of violence, they disagree about whether his 1988 conviction for criminal recklessness also constitutes a crime of violence. The Guidelines define "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). It is indisputable that under Indiana law a Class D felony is punishable by more than one year of imprisonment. *See* Ind.Code § 35–50–2–7. Furthermore, the parties agree that criminal recklessness under Ind.Code § 35–42–2–2 does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Therefore, our inquiry must focus on whether Jackson's offense "involve[d] conduct that present[ed] a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). In making this determination, the Application Notes direct us to look to "the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted" to determine whether that conduct "involved use of explosives . . . or, by its nature, presented a serious potential risk of physical injury to another." U.S.S.G.

§ 4B1.2, Application Note 1. *See also* U.S.S.G. § 4B1.2, Application Note 2 ("[T]he offense of conviction (i.e., the conduct of which the defendant was convicted) is the focus of inquiry."). The district court held that Jackson's criminal recklessness offense did not fall within the definition of "crime of violence." We review *de novo*.

As the Application Notes suggest, it is the conduct for which the defendant was convicted, not the conduct of which he was charged, that is critical. In this case, Jackson was initially charged with attempted murder, but pled guilty to "Criminal Recklessness, a Class D Felony." (Elkhart Circuit Court Order of April 14, 1988, Cause No. 8710–CF 062.) As a result, Jackson's guilty plea did not necessarily constitute an admission of all the conduct charged in his information. *Cf. United States v. Shannon*, 110 F.3d 382, 385 (7th Cir.1997) (en banc) (finding it significant that "the information was the basis of the conviction and sentence and all its allegations were admitted and must be deemed established"). So we must determine what conduct Jackson pled guilty to before deciding whether Jackson's conduct presented a serious risk of physical injury to another.

■ In determining whether a defendant has been convicted of a crime of violence, a sentencing court is ordinarily restricted to considering the statutory definition of the offense of conviction and the charging document. *Id.* at 384. *See also Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 2160, 109 L.Ed.2d 607 (1990) (dealing with the definition of "violent felony" in the Armed Career Criminal Act, 18 U.S.C. § 924(e), which is almost identical to the Sentencing Guidelines' definition of "crime of violence," U.S.S.G. § 4B1.2(a)). This rule is meant to prevent sentencing hearings from turning into mini-trials. *See Taylor*, 495 U.S. at 601–2, 110 S.Ct. at 2159–60; *Shannon*, 110 F.3d at 384. However, the procedure often breaks down when a defendant has pled guilty to an offense other than the one charged because it is often difficult to tell what conduct the defendant has admitted. In such circumstances, several circuits allow sentencing judges to look at easily produced and evaluated court documents, such as "the judgment of conviction, plea agreement or other statement by the defendant on the record, presentencing reports adopted by the court, and the findings of the sentencing judge." *United States v. Hill*, 131 F.3d 1056, 1064 (D.C.Cir.1997). *See also United States v. Bennett*, 108 F.3d 1315, 1317 (10th Cir. 1997); *United States v. Spell*, 44 F.3d 936, 939 (11th Cir.1995).

We need not decide whether such a cumbersome inquiry might be appropriate in all cases, however, because in this case, even when we consider only those charges in the information that are essential to the criminal recklessness conviction, it is apparent that Jackson was convicted of a crime of violence. By considering only the minimum facts necessary to support Jackson's conviction, we can ensure that we impose a sentence enhancement only for conduct of which Jackson was actually convicted. *See Taylor*, 495 U.S. at 601–2, 110 S.Ct. at 2160 ("[I]f a guilty plea to a lesser ... offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to [the charged offense]."). Although at least one circuit has rejected this approach, *see Hill*, 131 F.3d at 1061 ("[W]hen a defendant pleads guilty to a lesser included offense of the offense charged in the indictment and the statutory definition of the lesser offense allows conviction for conduct that does not meet the definition of a 'crime of violence,' the indictment alone does not provide a sufficient basis for designating an offense a 'crime of violence.' "), another has adopted it, *see United States v. Arnold*, 58 F.3d 1117, 1124 (6th Cir.1995) (holding that, when a defendant has not been convicted of the offense with which he was originally charged, the sentencing court's inquiry

should be limited to "only those charges in the indictment that are essential to the offense to which [the] defendant entered his plea."). And we suggested a similar procedure in *Shannon*, 110 F.3d at 385 (advising that when a criminal complaint is the only charging document, the sentencing judge should "consider only the minimum facts required to support the conviction").

Criminal recklessness under Ind.Code § 5–42–2–2 can be anything from a Class B misdemeanor to a Class C felony, depending on whether a vehicle or deadly weapon is used and on whether serious bodily injury results. A person can commit the Class D felony version of criminal recklessness in one of two ways. The first way is by recklessly, knowingly, or intentionally, while armed with a deadly weapon, either performing an act that creates a substantial risk of bodily injury to another person, or hazing, i.e., forcing or requiring another person to perform an act that creates a substantial risk of bodily injury. Ind.Code § 35–42–2–2(b). *See also* Ind. Code § 35–42–2–2(a). The second way is by "recklessly, knowingly, or intentionally . . . inflict[ing] serious bodily injury on another person; or . . . perform[ing] hazing that results in serious bodily injury to a person." Ind.Code § 35–42–2–2(c). The first type of Class D felony criminal recklessness presents a serious risk of physical injury by definition. However, the same cannot be said about the second type of Class D felony criminal recklessness. As we explained in *United States v. Rutherford*, it is "nonsensical" to say that "conduct created a serious risk of injury because [it] in fact injured another person." 54 F.3d 370, 376 (7th Cir.1995). Even conduct that presents a minimal risk of injury can result in injury. *Id.*

The Indiana indictment charged Jackson with: (1) "touching, beating, striking and kicking" the victim, (2) physically restraining the victim while the victim was touched, beaten, stricken, and kicked, (3) physically restraining the victim while another person aimed a firearm at the victim, and (4) physically restraining the victim while a shotgun was fired at the victim. (Elkhart Circuit Court Information, Sept. 30, 1987, Cause No. 8710–CF 062.) Because Jackson was not armed during the altercation, none of these acts constitutes the first type of Class D felony criminal recklessness (i.e. recklessly, knowingly, or intentionally performing an act that creates a substantial risk of bodily injury while armed with a deadly weapon, Ind. Code § 35–42–2–2(b)). However, each of the acts charged does constitute the second type of Class D felony criminal recklessness (i.e. recklessly, knowingly, or intentionally inflicting serious bodily injury on another person, Ind.Code § 35–42–2–2(c)). Furthermore, each of the charged acts involved conduct that presented a serious risk of physical injury to another. Regardless of whether it was the beating or one of the various types of restraint that provided the basis for Jackson's plea, he was clearly convicted of a crime of violence within the meaning of U.S.S.G. § 4B1.2(a)(2). Since Jackson had two prior felony convictions for crimes of violence, he should have received a career offender enhancement pursuant to U.S.S.G. § 4B1.1.

## Conclusion

For the foregoing reasons, we AFFIRM Jackson's conviction, VACATE his sentence, and REMAND for resentencing consistent with this opinion.